**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3507
_____

WILLIAM F. METZ,

Petitioner

v.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION;
CARMEUSE LIME, INC.,

Respondents
_____

On Petition for Review of a Decision of the
Federal Mine Safety and Health Review Administration
MSHA-1: PENN 2009-514-DM
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 30, 2013

BEFORE: JORDAN, VANASKIE and COWEN, Circuit Judges

(Filed: July 29, 2013)

_____

OPINION
_____

COWEN, Circuit Judge.

Appellant William Metz ("Metz") appeals a decision of the Federal Mine Safety and Health Review Commission ("Commission"). The Commission affirmed a decision by an Administrative Law Judge ("ALJ") who, after conducting a hearing, concluded that Metz's discharge by Appellee Carmeuse Lime, Inc. ("Carmeuse") was not a violation of section 105(c) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 815(c). We will affirm.

I.

We write exclusively for the parties who are familiar with the factual context and legal history of this case. Therefore, we set forth only the facts that are necessary for our analysis.

Metz worked as a millwright at Carmeuse. In early 2009, contractors began removing and replacing four kilns that were used in the process of creating lime from limestone. Metz expressed concern for the safety of the contractors and Carmeuse employees to a number of people in Carmeuse management.

Around the same time, Metz met with Melissa Croll, a corporate human resources manager, about Carmeuse's new "on-call" policy for hourly employees. Metz and Croll both testified about the meeting at the ALJ hearing. The ALJ determined that their testimony could not be reconciled. Croll testified that Metz used profanity at the meeting, was loud and aggressive, and apparently lunged at Croll when he left the meeting. Metz testified that he did not use profanity towards Croll at the meeting.

2

After the meeting, Croll undertook an investigation and discovered several prior instances of similar conduct involving Metz. Carmeuse decided to terminate Metz's employment because of his "repeated use of profane, vile, threatening and/or abusive language in the workplace." (App. 352.) Metz requested peer review of his termination; this request was denied due to the sensitive nature of some of the information gathered during the investigation.

Metz filed a complaint with the Mine Safety and Health Administration ("MSHA"), claiming that Carmeuse discriminated against him for making a safety-related complaint. The MSHA concluded that no discrimination occurred. Thereafter, Metz filed a discrimination complaint with the Commission. An ALJ held a three-day hearing and issued an opinion, concluding that Metz's discharge did not violate section 105(c)(3) of the Federal Mine Safety and Health Act. In his written decision, the ALJ found that Croll was credible in her testimony relating to the meeting with Metz, and that Metz was evasive in his testimony. (App. 464.) Metz appealed to the Commission, which affirmed the ALJ decision. One commissioner issued a dissenting opinion. This appeal followed.[1]

II.

A.

---

[1] The Commission had jurisdiction over this matter under 30 U.S.C. § 823(d). We have jurisdiction under 30 U.S.C. § 816. We review legal conclusions *de novo*. *Cumberland Coal Res., LP v. Fed. Mine Safety & Health Review Comm'n*, 515 F.3d 247, 252 (3d Cir. 2008). "The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." *Id.* (quoting 30 U.S.C. § 816(a)(1)).

3

First, Metz argues that the Commission erred in affirming the ALJ's determination that Carmeuse rebutted Metz's prima facie case of discrimination. In order to establish a prima facie case of discrimination under section 105(c)(3), a complainant must prove, by the preponderance of the evidence "(1) that he engaged in a protected activity, and (2) that the adverse action was motivated in any part by the protected activity." *Sec'y of Labor on behalf of Pasula v. Consolidation Coal Co.*, 2 FMSHRC 2786, 2799 (1980), *reversed on other grounds sub nom. Consol Coal Co. v. Marshall*, 663 F.2d 1211 (3d Cir. 1981). The employer can rebut the prima facie case by showing by the preponderance of the evidence "that the complainant did not engage in protected activity or that the adverse action was in no part motivated by protected activity." *Sec'y of Labor on behalf of Robinette v. United Castle Coal Co.*, 3 FMSHRC 803, 818 n.20 (1981).

The ALJ found that Metz established a prima facie case and the Commission concluded that substantial evidence supported this determination. We agree that substantial evidence supports this conclusion, because Metz made several safety-related complaints prior to his termination.

The ALJ found that Carmeuse rebutted the prima facie case by showing that Metz was terminated due to his "repeated use of profane, vile, threatening and/or abusive language in the workplace." (App. 352.) This finding was based in large part on the ALJ's determination that Metz's testimony about his use of profane language was "evasive" and that Croll's account was credible. (App. 464.) The Commission concluded that this determination was supported by substantial evidence.

4

On appeal, Metz's primary argument is that the ALJ's credibility determination was not supported by substantial evidence. Essentially, Metz urges this Court to disregard the ALJ's determination that Metz was "evasive" in his testimony and conclude that Metz was more credible than Croll. We decline to do so. Overturning an ALJ's credibility determination is an "extraordinary step," as credibility determinations are entitled to a great deal of deference. *See Keystone Coal Mining Corp. v. Sec'y of Labor*, 17 FMSHRC 1819, 1881 (1995), *affirmed by* 151 F.3d 1096 (D.C. Cir. 1998). We decline to take such an "extraordinary step." Here, there is substantial evidence in the record to support the ALJ's finding that Metz was not credible and that Carmeuse was able to rebut the prima facie case.[2]

B.

Metz also argues that the ALJ and the Commission failed to follow *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), by not adequately examining the evidence to determine whether Carmeuse's reasons for terminating Metz

---

[2] Metz also argues that we should conclude that Carmeuse failed to rebut the prima facie case because Metz's alleged conduct did not warrant termination and because the ALJ improperly relied on testimony of other witnesses, including certain testimony that is "double-hearsay." Since we must use the highly deferential substantial evidence standard, these arguments are without merit. There is substantial evidence in the record to justify the ALJ's determination that Metz was terminated because of his use of profane language, and even if the ALJ were to disregard some of the testimony that Metz objects to (even though hearsay is permitted at such hearings, *see* 29 C.F.R. § 2700.63(a)), there is still substantial evidence in the record to support a finding that Carmeuse would have terminated Metz's employment even absent his safety-related complaints.

were pretextual. Metz argues that, under *Burdine*, he is entitled to a "full and fair opportunity to demonstrate pretext." *Id.* at 1095.

We conclude that both the ALJ and the Commission considered and rejected Metz's arguments that his termination was pretextual, and the ALJ engaged in a lengthy discussion about whether Carmeuse's proffered business justifications for terminating Metz were pretextual. (*See* App. 465-468.) Metz argues that the ALJ failed to consider certain evidence present in the record such as evidence of animus about Metz's safety complaints. But, the ALJ considered whether Metz was a victim of disparate treatment and concluded that Carmeuse did not have a general intolerance of safety related complaints. Notably, the ALJ found that other Carmeuse employees made similar complaints about the safety of the kiln contractor, and there is no evidence that any of them were terminated. Metz also argues that his termination was pretextual because the record reveals that other Carmeuse employees have used vulgar language and were not terminated. The ALJ addressed and rejected this argument, and there is substantial evidence in the record to support that conclusion. Finally, Metz argues that Carmeuse's denial of peer review for Metz's termination is evidence that his termination was pretextual because Carmeuse generally permits peer review of termination decisions. The ALJ accepted Carmeuse's argument that peer review was not offered in this case due to the sensitive nature of some of the allegations in the case. Again, the record contains substantial evidence to support this conclusion.

III.

6

For the foregoing reasons, we will affirm the decision of the Federal Mine Safety and Health Review Commission.